# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| ROSEZONDA L. MARTIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 7:14cv464 |
| v. | ) |
| | ) |
| MCAP CHRISTIANSBURG, LLC, et al., | ) By: Hon. Michael F. Urbanski |
| | )     United States District Judge |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter is before the court on defendants MCAP Christiansburg, LLC and Commonwealth Assisted Living, LLC's (collectively "Commonwealth") first motion for summary judgment as to liability, ECF No. 57, and second motion for partial summary judgment as to damages, ECF No. 59. The issues have been fully briefed and oral argument was conducted on September 14, 2015.

In this action, plaintiff Rosezonda L. Martin alleges that she was subjected to sexual harassment and a hostile work environment while working as a med tech and certified nursing assistant at the Wheatland Hills assisted living facility operated by Commonwealth. Martin alleges that she was harassed by means of the obsessive, amorous attention of a co-worker, C.J. Long.

Because the court finds that genuine issues of material fact exist, Commonwealth's motion for summary judgment as to liability, ECF No. 57, is **DENIED**.

On the issue of damages, however, the court concludes that Commonwealth's motion for partial summary judgment must be granted. Martin does not claim that she was constructively terminated as a result of the alleged hostile work environment, nor does she claim that she was terminated in retaliation for bringing a charge of discrimination. Rather, Martin claims that she was terminated because she brought a workmen's compensation claim, an issue that is not pending in

this court. As a result, Commonwealth's motion for partial summary judgment as to damages, ECF No. 59, is **GRANTED**.

I.

The Supreme Court has recognized that sexual harassment that creates a hostile or abusive atmosphere in the workplace may give rise to a claim of sex discrimination under Title VII. Meritor Savings Bank v. Vinson, 477 U.S. 57, 66 (1986). To prove a hostile work environment claim under Title VII, the plaintiff must show (1) that the conduct in question was unwelcome, (2) that the harassment was based on gender, (3) that the harassment was sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment, and (4) that some basis exists for imputing liability to the employer. EEOC v. Central Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009) (citing EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 313-14 (4th Cir. 2008)).

In its motion for summary judgment as to liability, ECF No. 57, Commonwealth argues that Martin cannot meet any of these elements. First, Commonwealth contends that the evidence shows that Martin had an on-again, off-again relationship with Long, and that, as such, there is no genuine issue of material fact to establish that his advances were unwelcome. Second, Commonwealth asserts that Long's actions were not undertaken as a result of Martin's gender; rather, they stemmed from his personal contempt as a result of his failed relationship with Martin. Third, Commonwealth argues that none of Long's conduct was threatening, degrading or humiliating. Accordingly, Commonwealth argues that Long's affections were not sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. Fourth, Commonwealth argues that there is insufficient evidence to impute Long's actions to Commonwealth and that when Long's conduct was reported, Commonwealth took prompt and effective action to stop it. Based on the factual record developed to date, the court concludes summary judgment cannot be granted at this stage.

2

## A.

As to the first element, courts have held "[a]dvances are unwelcome if the plaintiff regarded them as undesirable or offensive and did not solicit or incite them." Briggs v. Waters, 484 F. Supp. 2d 466, 478 (E.D. Va. 2007) (citing Lewis v. Forest Pharm., Inc., 217 F. Supp. 2d 638, 647 (D. Md. 2002)). The evidence on the welcomeness or unwelcomeness of Long's affections presents a close summary judgment issue.

In particular, there is evidence that Long's advances were not entirely unwelcome, including evidence that Martin visited Long at his home during the evening on at least three occasions.[1] Although she complains about Long's annoyingly devoted behavior in this suit, Martin accepted many gifts from Long, including cards, flowers and regular cups of coffee and lunches. Moreover, while Long phoned or texted Martin frequently, none of his incessant calls were obscene, humiliating or offensive. Rather, he was simply asking her to call him back or expressing his affection for her. Even after complaining to Commonwealth management about Long, Martin asked management whether she could reach out to him with a get well card, explaining that she "assumed we were friends again." Martin Dep. at 119, ECF No. 90-1.

To be sure, Martin testified that she found Long's attention unwelcome. At the same time, however, it is difficult to reconcile this testimony with the fact that she made multiple visits to Long's home after work hours and her acceptance of his many gifts, coffee and lunches. While Commonwealth's argument is persuasive, the Supreme Court has stated that "the question whether particular conduct was indeed unwelcome presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact." Meritor, 477 U.S. at 68. As such, Commonwealth cannot prevail at this stage on the first element.

---

[1] While Long testified that Martin visited his home after work hours around five times, Martin would only admit to three.

3

**B.**

"An employee is harassed or otherwise discriminated against 'because of' his or her sex if, 'but-for' the employee's sex, he or she would not have been the victim of discrimination." Wrightson v. Pizza Hut of America, Inc., 99 F.3d 138, 142 (4th Cir. 1996) (citing Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); Fuller v. Phipps, 67 F.3d 1137, 1144 (4th Cir. 1995)). Commonwealth argues that Long's conduct was not based on Martin's gender, but rather stemmed from his frustration at their failed relationship. Long testified that at one time he was interested in pursuing a romantic relationship with Martin and that he sent her flowers, notes and cards to that end. To be sure, after Martin told Long that she did not want to be his girlfriend, Long became frustrated and left a host of voice messages on her home answering machine. However, the court cannot conclude as a matter of law that Long's conduct was motivated by frustration, rather than Martin's gender. Because factual issues exist as to the second element at this stage, summary judgment is not appropriate.

**C.**

Element three of a hostile work environment claim requires a showing that the harassment was severe or pervasive. A hostile environment exists "'[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 276-77 (4th Cir. 2015) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). To determine whether the conduct was severe or pervasive, courts consider the "'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998) (quoting Harris, 510 U.S. at 23).

4

The severe or pervasive element has "'both subjective and objective components.'" Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 208 (4th Cir. 2014) (quoting Central Wholesalers, 573 F.3d at 175). In order to prevail, Martin must show that she "perceived – and that a reasonable person would perceive – the environment to be abusive or hostile." Id. Whether the environment is objectively hostile or abusive is "judged from the perspective of a reasonable person in the plaintiff's position." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998). That determination is made "by looking at all the circumstances." Harris, 510 U.S. at 23. It "is not, and by its very nature cannot be, a mathematically precise test." Id. at 22; see also Oncale, 523 U.S. at 81-82 ("The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.").

The Fourth Circuit has made it clear that "plaintiffs must clear a high bar in order to satisfy the severe or pervasive test . . . . [E]ven incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard." EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008). "Thus, complaints premised on nothing more than 'rude treatment by [coworkers],' 'callous behavior by one's superiors,' or 'a routine difference of opinion and personality conflict with [one's] supervisor,' are not actionable under Title VII." Id. at 315-16 (internal citations omitted). When evaluating a hostile work environment claim, the court must be cognizant of the fact that Title VII is not a "general civility code." Oncale, 523 U.S. at 81. While it protects against sexual harassment, it does not reach mere boorishness or crude behavior. EEOC v. Fairbrook Medical Clinic, P.A., 609 F.3d 320, 328 (4th Cir. 2010).

At the same time, however, "an 'isolated incident[ ]' of harassment can 'amount to discriminatory changes in the terms and conditions of employment,' if that incident is 'extremely serious.'" Boyer-Liberto, 786 F.3d at 277 (quoting Faragher, 524 U.S. at 788).

5

The court has little difficulty finding that much of Long's conduct complained of by Martin falls short of the pervasive or severe requirement. Even Martin did not characterize much of Long's attention towards her, however frequent and annoying, as being sexual or vulgar in nature. Rather, her complaints center around his interest in sitting with her at lunch, buying her coffee and gifts, sending her cards and text messages, and calling her on the telephone. For example, when questioned about the voice messages left by Long on Martin's home phone, Martin testified that "[i]t's not sexual, it is harassing." Martin Dep. at 150, ECF No. 90-1.

To counter Commonwealth's argument that Long's workplace affections were not sufficiently severe or pervasive to create an abusive environment, Martin points to her allegations of improper workplace physical contact. Martin testified that Long hugged and kissed her on occasion, grabbed her butt one time, told her that she had a nice "a**" and that she should wear certain scrubs. Martin testified that Long once dragged her into a room and fussed with her for not being his girlfriend. Further, Martin only described one instance of profanity uttered by Long. In that instance, Martin testified that Long called her "an effin B," "a whore," and "a slut" because he was angry that Martin would not be her girlfriend.

At the end of the day, "whether [Long's] harassment was sufficiently severe or pervasive is quintessentially a question of fact." Paroline v. Unisys Corp., 879 F.2d 100, 105 (4th Cir. 1989), vacated in part on other grounds, 900 F.2d 27 (4th Cir. 1990). The court does not view the bulk of Long's interest in Martin, expressed in terms of buying coffee or lunches for her, giving her flowers or gifts, following her, and emphasizing his love for her in banal cards or phone messages, as being so severe or pervasive as to create an abusive working environment. However, the several occasions of physical contact and profanity asserted by Martin are enough to raise a jury question as to whether Martin's workplace environment was objectively hostile or abusive.

6

Thus, the court must examine the fourth element – whether there is some basis for imputing liability to Commonwealth for the few instances of physical contact and vulgar behavior by Long.

### D.

It is undisputed in this case that Long was not Martin's supervisor – he was a co-worker. "If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." Vance v. Ball State Univ., ___ U.S. ___, 133 S. Ct. 2434, 2439 (2013). "[T]he employer may be liable in negligence if it knew or should have known about the harassment and failed to take effective action to stop it." Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 333-34 (4th Cir. 2003) (citing Spicer v. Commonwealth of Va. Dep't of Corr., 66 F.3d 705, 710 (4th Cir. 1995); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 759 (1998)). "'[T]he law against sexual harassment is not self-enforcing and an employer cannot be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem exists.'" Barrett v. Applied Radiant Energy Corp., 240 F.3d 262, 268 (4th Cir. 2001) (quoting Shaw v. AutoZone, Inc., 180 F.3d 806, 813 (7th Cir. 1999)). In particular, "an employer is directly liable for an employee's unlawful harassment if the employer was negligent with respect to the offensive behavior." Vance, 133 S. Ct at 2441 (citing Faragher, 524 U.S. at 789).

While Commonwealth argues that Martin never complained to management about Long's physical contact or vulgar behavior, the record is insufficiently clear to allow the court to reach that conclusion. The only specific instance of a complaint to management by Martin took place on August 13, 2012. On that occasion, Martin complained to Debra Warren, the executive director of Commonwealth's Wheatland Hills facility, that Long had left her repeated messages to call him.[2] Some of those messages also indicated that he was thinking of her, loved her, was concerned about

---

[2] Martin admitted that she had made no complaints to Debra Warren about Long before August 13, 2012, noting however that Warren had been at the Wheatland Hills facility only since May, 2012.

7

her or apologized to her. Martin played a recording of the voice messages for Warren. Martin testified that after Warren listened to the messages, Warren told Long to leave Martin alone and changed their work schedules to limit Long's interaction with Martin. It is undisputed that Martin did not complain to Warren about physical contact by Long.

While Martin did not provide details of any other specific instance of a complaint to Commonwealth management about Long, she testified generally that she had complained about Long's sexual harassment, but that Commonwealth's administrators did not "stay there long enough to do anything about it." Martin Dep. at 71, ECF No. 90-1. When asked about complaints of physical contact, Martin testified as follows:

> Q. But you never complained to Debra Warren or management, before August 13 of 2012, that: C.J. [Long] was kissing me or was grabbing me or was sexually attacking me in any way, did you?
>
> A. I had told several administrators. Like I said before, they never was there long enough. There was so many administrators in and out, in and out, in and out. That's why nothing got done. They were fired, they were – they left because they couldn't handle the Commonwealth rules, whatever it might be. But I couldn't get no one to help with the situation. And every day, I had to come in and deal with it and try to do my job.
>
> \* \* \*
>
> Q. You never reported that he grabbed your butt, did you?
>
> A. I reported to a lot of people, and everybody tried to talk to C.J. [Long].
>
> \* \* \*
>
> Q. You didn't report to her [Debra Warren] there was any kissing; you didn't report to her that there was any grabbing or touching, did you?
>
> A. On this date [August 13, 2012], no.
>
> Q. Or anywhere in your complaint.

8

> A. Like I said earlier, I have told other administrators and stuff. I've told Becky Powell, I've told everybody. . . .

Martin Dep. at 87-88, 91, 129, ECF No. 90-1.

Given Martin's testimony, the court cannot conclude that there is no genuine issue of material fact as to whether Martin complained to Commonwealth management that Long physically contacted her in the workplace prior to her complaint to Debra Warren on August 13, 2012. Because the facts are murky as to Martin's prior complaints, the court cannot at this stage determine whether Commonwealth was negligent in its response.

In sum, whether Long's affections were unwelcome, were based on Martin's gender, rose to the level of severe or pervasive harassment or are imputable to Commonwealth raise questions of material fact precluding summary judgment at this stage.

## II.

In the partial motion for summary judgment as to damages, ECF No. 59, Commonwealth argues that Martin is not entitled to monetary damages resulting from her termination in September, 2012. Commonwealth explains that Martin was terminated for gross insubordination and chronic poor job performance on September 6, 2012. Six days later, on September 12, 2012, Commonwealth states that it learned that Martin removed patient files from the Wheatland Hills facility in violation of federal law. As such, Commonwealth argues that Martin is barred from recovering any damages allegedly suffered after September 12, 2012, including any claims for lost wages or benefits, front pay, back pay or any other pecuniary losses, punitive damages or compensatory damages. In response, Martin asserts that she is not seeking damages for wrongful termination in this federal action. While Martin's original complaint alleged retaliatory discharge in violation of Title VII, she abandoned this claim in her amended complaint in favor of a state court lawsuit claiming that she was wrongfully terminated for filing a worker's compensation claim.

9

Given that plaintiff's termination on September 6, 2012 is not an issue in this case, Martin may make no claim for monetary damages arising out her termination, including any claim for lost wages, benefits, front pay or back pay. Martin may make a claim for compensatory damages under Title VII caused by the hostile work environment she claims she experienced prior to her termination on September 6, 2012. Compensatory damages may include emotional distress and humiliation as well as out-of-pocket costs. See 42 U.S.C. § 1981a(a). Although this case does not appear to be one in which punitive damages are recoverable, the court will defer judgment on that issue until it hears the evidence at trial.

Accordingly, Commonwealth's motion for partial summary judgment as to damages is **GRANTED** to the extent that Martin may not claim damages, including a claim for lost wages, benefits, front pay or back pay, arising from her termination on September 6, 2012. Should she prevail at trial on her hostile work environment claim, Martin's damages are limited to compensatory damages caused by Commonwealth's conduct during the period of her employment. The issue of punitive damages is reserved for trial.

An appropriate order will be entered.

Entered: October 28, 2015

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge